FILED
May 19, 2022
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

SEALED

PHILLIP A. TALBERT
United States Attorney
ELLIOT C. WONG
CHRISTOPHER S. HALES
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHANELL EASTON,<br>    aka Chanell Bright,<br>    aka Chanell Cheney,<br><br>Defendant. | CASE NO. 2:22-cr-0103 JAM<br><br>18 U.S.C. § 1343 – Wire Fraud (22 counts); 18 U.S.C. § 1028A – Aggravated Identity Theft (2 counts); 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture |

I N D I C T M E N T

COUNTS ONE THROUGH TWENTY-TWO: [18 U.S.C. § 1343 – Wire Fraud]

The Grand Jury charges:

CHANELL EASTON,

defendant herein, as follows:

I.   INTRODUCTION

1.   Defendant CHANELL EASTON was a resident of Yuba City and Marysville, California, and later of Oklahoma City, Oklahoma. From in or around June 2013, through in or about April 2018, EASTON was employed as the church administrator of Church 1.

2.   Church 1 was located in Yuba City, in the state and Eastern District of California, at all times relevant to the Indictment.

## II. SCHEME TO DEFRAUD

3. Beginning no later than November 2013, and continuing until in or around April 2018, in the County of Sutter, State and Eastern District of California, and elsewhere, EASTON knowingly devised, intended to devise, and participated in, with the intent to defraud, a material scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, promises, half-truths, omissions, and the concealment of material facts.

4. The purpose of the scheme and artifice to defraud was to obtain, convert, and spend money belonging to Church 1, without the authorization and knowledge of the church treasurer and governing body, for unauthorized personal purposes that did not benefit Church 1.

## III. MANNER AND MEANS

In furtherance of the fraud, EASTON employed the following manner and means, among others:

5. As church administrator, EASTON managed the day-to-day finances of Church 1. EASTON reported to, and was supervised by, Church 1's treasurer and its governing body. EASTON was responsible for making cash deposits of donated funds, printing checks for the church treasurer to sign, and, at times, running payroll. EASTON could not exercise authority to sign checks or open or close new bank accounts or credit cards. EASTON typically submitted monthly income and expense reports to the church treasurer and its governing body. EASTON also submitted periodic payroll reports to Church 1's treasurer, often every two weeks.

6. EASTON gained functional control of various Church 1 bank accounts in her role as church administrator. Among other things, EASTON obtained, converted, and spent Church 1 funds directly and indirectly from those accounts for her own personal benefit by using unauthorized credit cards, ACH fund transfers, and forged and unauthorized checks, as set forth below.

7. EASTON opened five Bank of America ("BoA") business credit card accounts, which she associated with Church 1. EASTON opened the credit card accounts without the authorization and knowledge of the church treasurer and governing body. EASTON used the BoA business credit cards to incur hundreds of thousands of dollars in charges for unauthorized personal purposes that did not benefit Church 1. EASTON used money belonging to Church 1 to pay off these charges, including money from a Church 1 account at Suncrest Bank. For example, EASTON used BoA business credit card ending

in -3712 to charge a payment of approximately $2,072.20 to an online vacation rental service to rent a house in Fort Bragg, California. As an additional example, EASTON used BoA business credit card ending in -2237 to charge a payment of approximately $923.54 to an online concert ticket merchant for two tickets to a country music concert.

8. EASTON also used the Church 1 youth ministry's credit card to incur thousands of dollars in charges for unauthorized personal purchases that did not benefit Church 1. Though Church 1 had authorized its youth minister to have one BoA business credit card and to use it for authorized purchases relating to youth ministry activities, EASTON used the youth minister's credit card for personal purchases without the authorization and knowledge of Church 1's treasurer, youth minister, and governing body. EASTON used money belonging to Church 1, including from the church's accounts at Suncrest Bank and Tri-Counties Bank, to pay off these charges. For example, EASTON used the youth pastor's business credit card to charge a payment of approximately $600.07 to an online retailer to purchase, among other personal items, a rose gold ring and a necklace. As an additional example, EASTON used the youth pastor's business credit card to charge another payment of approximately $343.22 to this same online retailer to purchase, among other personal items, a lace halter.

9. In furtherance of the scheme, EASTON also obtained money from Church 1 by means of Automated Clearing House ("ACH") transfers from the church's bank accounts. EASTON caused these transfers without the authorization and knowledge of Church 1's treasurer and governing body. These transfers were for unauthorized personal purposes that did not benefit Church 1. For example, over several years EASTON used approximately over $14,000 from Church 1's bank accounts to pay her personal cell phone bills and to buy new cell phones for her and her family. EASTON caused the transfers of these funds from Church 1 accounts at Suncrest Bank and Tri-Counties Bank, including from the account associated with the church's community food pantry. As an additional example, EASTON transferred, in total, approximately $2,900 from a Church 1 account at Suncrest Bank to her personal checking account.

10. It was further part of the scheme that EASTON obtained and converted money from Church 1 by means of personal and cashier's checks payable to herself and others. EASTON deposited many of the checks into her personal checking account, cashed others, and caused some to be made

INDICTMENT 3

payable to third parties such as her own landlord. Among other things, EASTON wrote checks from bank accounts belonging to Church 1 and forged the signatures of real persons associated with the church on checks. For example, EASTON wrote approximately over $60,000 in checks drawn from a Church 1 account at Suncrest Bank payable to herself, and forged the signature of the head volunteer of the church's community food pantry on the checks. As an additional example, EASTON wrote checks drawn from two Church 1 accounts at Tri-Counties Bank, payable to herself, totaling approximately $7,888.48, and forged the signature of the church treasurer on the checks.

11. In furtherance of the scheme, EASTON made materially false statements, representations, and half-truths about Church 1's finances to Church 1 and its representatives, including to Church 1's governing body and its treasurer. For example, some of EASTON's income and expense reports falsely stated the true extent of Church 1's expenditures for the month. In addition, EASTON's payroll reports often contained false numbers for the amount of money she herself had received from Church 1 during the relevant pay period.

12. Also in furtherance of the scheme, EASTON omitted material information and concealed material facts from Church 1 and its representatives about the church's finances. For example, EASTON did not accurately report the transactions alleged in paragraphs 6 through 10 above in the monthly financial reports she submitted to the church treasurer and governing body, or in the payroll reports she submitted to the treasurer. EASTON also concealed from Church 1 that she had opened five new BoA credit cards in Church 1's name. EASTON had a duty to disclose this information because EASTON was a fiduciary of, and entered into a trust relationship with, Church 1 as its paid church administrator entrusted to handle its day-to-day finances.

13. As a result of the scheme, EASTON defrauded Church 1 of approximately $361,141.13.

### IV. INTERSTATE WIRE COMMUNICATIONS

14. On or about the dates set forth below, in the State and Eastern District of California, and elsewhere, for the purposes of executing and attempting to execute the aforementioned scheme and artifice to defraud, EASTON did knowingly cause to be transmitted by means of wire in interstate commerce, the writings, signs, signals, and sounds specified below:

| Count | On or About | Description |
|---|---|---|
| 1 | May 24, 2017 | Signals associated with ACH transaction from Suncrest Bank account -3050, payable to EASTON's Verizon account -8981, in the amount of $520.31. |
| 2 | June 6, 2017 | Signals associated with ACH transaction from Suncrest Bank account -3050, payable to EASTON's Verizon account -8981, in the amount of $520.31. |
| 3 | June 27, 2017 | Signals associated with ACH transaction from Suncrest Bank account -3050, payable to EASTON's Capital One credit card account -4589, in the amount of $228.83. |
| 4 | July 18, 2017 | Signals associated with ACH transaction from Suncrest Bank account -3050, payable to EASTON's Capital One credit card account -4589, in the amount of $228.05. |
| 5 | July 20, 2017 | Signals associated with ACH transaction from Suncrest Bank account -3050, payable to EASTON's Verizon account -8981, in the amount of $513.42. |
| 6 | August 9, 2017 | Signals associated with ACH transaction from Suncrest Bank account -3050, payable to EASTON's Capital One credit card account -4589, in the amount of $288.08. |
| 7 | August 10, 2017 | Signals associated with ACH transaction from Suncrest Bank account -3050, payable to Bank of America credit card account -8423, in the amount of $600.00. |
| 8 | August 30, 2017 | Signals associated with ACH transaction from Suncrest Bank account -3050, payable to Bank of America credit card account -8423, in the amount of $600.00. |
| 9 | September 14, 2017 | Signals associated with ACH transaction from Suncrest Bank account -3050, payable to Bank of America credit card account -8423, in the amount of $500.00. |
| 10 | October 5, 2017 | Signals associated with ACH transaction from Tri-Counties Bank account -5777, payable to Bank of America credit card account -8423, in the amount of $2,000.00. |
| 11 | October 19, 2017 | Signals associated with ACH transaction from Suncrest Bank account -3050, payable to Bank of America credit card account -8423, in the amount of $500.00. |
| 12 | October 26, 2017 | Signals associated with ACH transaction from Suncrest Bank account -3050, payable to EASTON's Verizon account -8981, in the amount of $369.68. |
| 13 | October 26, 2017 | Signals associated with ACH transaction from Tri-Counties Bank account -5777, payable to Bank of America credit card account -8423, in the amount of $2,000.00. |
| 14 | November 9, 2017 | Signals associated with ACH transaction from Suncrest Bank account -3050, payable to Bank of America credit card account -8423, in the amount of $500.00. |
| 15 | November 16, 2017 | Signals associated with ACH transaction from Suncrest Bank account -3050, payable to Bank of America credit card account -8423, in the amount of $500.00. |

| | | |
|---|---|---|
| 16 | November 24, 2017 | Signals associated with ACH transaction from Suncrest Bank account -3050, payable to EASTON's Verizon account -8981, in the amount of $346.87. |
| 17 | December 1, 2017 | Signals associated with ACH transaction from Suncrest Bank account -3050, payable to EASTON's Capital One credit card account -4589, in the amount of $261.78. |
| 18 | December 19, 2017 | Signals associated with ACH transaction from Tri-Counties Bank account -5777, payable to Bank of America credit card account -8423, in the amount of $2,500.00. |
| 19 | January 18, 2018 | Signals associated with ACH transaction from Tri-Counties Bank account -5777, payable to Bank of America credit card account -8423, in the amount of $1,300.00. |
| 20 | February 23, 2018 | Signals associated with ACH transaction from Tri-Counties Bank account -5777, payable to Bank of America credit card account -8423, in the amount of $1,000.00. |
| 21 | February 26, 2018 | Signals associated with ACH transaction from Tri-Counties Bank account -5777, payable to Bank of America credit card account -8423, in the amount of $1,200.00. |
| 22 | March 13, 2018 | Signals associated with ACH transaction from Tri-Counties Bank account -5777, payable to Bank of America credit card account -8423, in the amount of $2,452.38. |

All in violation of Title 18, United States Code, Section 1343.

COUNTS TWENTY-THREE THROUGH TWENTY-FOUR: [18 U.S.C. § 1028A(a)(1) – Aggravated Identity Theft]

The Grand Jury further charges: T H A T

CHANELL EASTON,

defendant herein, on or about the dates specified below, in the State and Eastern District of California, and elsewhere, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in 18 U.S.C. §1028A, to wit: wire fraud in violation of Title 18, United States Code, Section 1343, knowing that the means of identification belonged to another actual person, as detailed more fully in the table below:

| Count | On or About | Means of Identification |
|---|---|---|
| 23 | October 4, 2017 | Name of Person 1 (Church 1's youth pastor) used as the billing addressee in connection with Zappos online purchase. |
| 24 | October 10, 2017 | Name of Person 1 (Church 1's youth pastor) used as the billing addressee in connection with Zappos online purchase. |

All in violation of Title 18, United States Code, Sections 2 and 1028A(a)(1).

INDICTMENT    6

<u>FORFEITURE ALLEGATION</u>: [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture]

1. Upon conviction of one or more of the offenses alleged in Counts One through Twenty-Two of this Indictment, defendant CHANELL EASTON shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable to such violations, including but not limited to the following:

    a. A sum of money equal to the total amount of proceeds traceable to such offenses, for which defendant is convicted.

2. If any property subject to forfeiture, as a result of the offenses alleged in Counts One through Twenty-Two of this Indictment, for which defendant is convicted:

    a. cannot be located upon the exercise of due diligence;
    b. has been transferred or sold to, or deposited with, a third party;
    c. has been placed beyond the jurisdiction of the court;
    d. has been substantially diminished in value; or
    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of defendant, up to the value of the property subject to forfeiture.

A TRUE BILL.

/s/ **Signature on file w/AUSA**
_____
FOREPERSON

*[signature]* Chi Soo K— for
_____
PHILLIP A. TALBERT
United States Attorney

*No.* _____

2:22-cr-0103 JAM

## UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

### THE UNITED STATES OF AMERICA
vs.

CHANELL EASTON,
aka CHANELL BRIGHT,
aka CHANELL CHENEY

### INDICTMENT

**VIOLATION(S):**  18 U.S.C. § 1343 – Wire Fraud (22 counts);
18 U.S.C. § 1028A – Aggravated Identity Theft (2 counts);
18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(1)—Criminal Forfeiture

*A true bill,*

/s/ Signature on file w/AUSA

*Foreman.*

*Filed in open court this* \_\_\_\_ **19th** _____ *day*

*of* _____ **May** _____, *A.D. 20* **22** \_\_\_

PBuzo

*Clerk.*

*Bail, $* \_\_ No Bail Bench Warrant.

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

GPO 863 52

2:22-cr-0103 JAM

## United States v. Chanell Easton
## Penalties for Indictment

**Defendant**
Chanel Easton

### COUNTS 1-22:

VIOLATION: 18 U.S.C. § 1343 – Wire Fraud

PENALTIES: A maximum of up to 20 years imprisonment;
Fine of up to $250,000, or twice the gross gain or gross loss, whichever is greater; or both fine and imprisonment
Supervised release of up to three years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

### COUNTS 23-24:

VIOLATION: 18 U.S.C. § 1028A – Aggravated Identity Theft

PENALTIES: Mandatory two years imprisonment, consecutive to any sentence imposed on Counts 1-22;
Fine of up to $250,000, or twice the gross gain or gross loss, whichever is greater
Supervised release of up to one year

SPECIAL ASSESSMENT: $100 (mandatory on each count)

### FORFEITURE ALLEGATION:

VIOLATION: 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)

PENALTIES: As stated in the charging document